ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 21 2016

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| MONICA BROWN | ) | |
| | ) | |
| COMPLAINANT, | ) | **JURY DEMAND** |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | 1:15-CV-04082-CAP |
| GLOBAL EMPLOYMENT SOLUTIONS, INC. | ) | |
| LEXINGTON INSURANCE | ) | |
| AIG | ) | |
| DEFENDANTS. | ) | |

## MOTION TO DISQUALIFY JOHN STEPHEN MIXON, ESQ., AS ATTORNEY OF RECORD FOR NON-PARTY MILLAR AND MIXON, LLC. AND MOTION TO DISMISS WITH PREDJUDICE MILLAR AND MIXON, LLC's CROSS-CLAIM

COMES NOW Monica Brown, Complainant (hereinafter "Brown or The Complainant") objects to any and all defenses of her case being removed from state court. Therefore, she files the following **MOTION TO DISQUALIFY JOHN STEPHEN MIXON, ESQ., AS ATTORNEY OF RECORD FOR NON-PARTY OF RECORD FOR MILLAR AND MIXON, LLC, AND MOTION TO DISMISS WITH PREDJUDICE MILLAR AND MIXON, LLC's CROSS-CLAIM** in the above style case, against Global Employment Solutions, Inc., Defendant (hereinafter "Global or GES") and Defendants Lexington Insurance (hereinafter "LI or Lexington") and AIG.

Brown objects to **NON-PARTY** Millar and Mixon, LLC. (hereinafter "MM") attorney of record John Stephen Mixon, Esq, (hereinafter "JSM" or "MIXON") representation of the firm in its cross-claim against her, because of his synchronized conflict of interests and her contentions for this motion are as follows:

1.

On or about December 10, 2013, Brown retained J. Stephen Mixon, P.C. (hereinafter "JSM PC") to represent her in a Title VII case against GES. JSM filed a civil action in this court against GES on Brown's behalf on December 23, 2013 and he represented her until his willful withdrawal in September 2014. As a result of JSM representation of Brown, she and Mixon had an attorney-client relationship. Further, she did business with JSM PC.

JSM is an **attorney/partner** at MM formerly Millar, Mixon & Hunt, LLC since October 12, 2000 (See Exhibit "A"). He is a partner of the firm. He has a financial interest in the business. He has handled legal work for the firm. He has access to **NON-PARTY MM's** financial information as a result of being their **attorney**. **NON-PARTY MM's** cross-claim against Brown is for attorney

fees that JSM is purportedly owed. As such, JSM has conflicting interest to represent MM in this matter.

2.

The 11th Circuit has ruled on disqualifying counsel "The party bringing the **motion** to **disqualify** bears the burden of proving the grounds for disqualification. In re Bellsouth Corp., 334 F.3d 941, 961 (11th Cir. 2003). "Because a party is presumptively entitled to the **counsel** of his choice, that right may be overridden only if `compelling reasons' exist." *Id.* (quoting Tex. Catastrophe Prop. Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992)). A disqualification order "is a harsh sanction, often working substantial hardship on the client" and therefore "should be resorted to sparingly." Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982). An objection based on conflict of interest "should be viewed with caution ... for it can be misused as a technique of harassment." Ala. Rules of Prof'l Conduct R. 1.7, cmt. To succeed on a conflict of interest claim, the conflict "must be actual, and not speculative." United States v. Tobon-Hernandez, 845 F.2d 277, 281 (11th Cir. 1988).

In ruling on a **motion** to **disqualify counsel**, the **district** court "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." Schlumberger Techs., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir. 1997). "

"First, the party seeking **disqualification** must prove that it once enjoyed an attorney-client relationship with the opposing lawyer; and second, the movant must show that the matters embraced within the pending suit are substantially related to the matters or cause of action wherein the attorney previously represented it. - in Matter of Head, 1990. "

"This substantial relationship test has been adopted by many circuit courts of appeal that have addressed the issue of attorney **disqualification** in the successive representation context.- in IN RE GOSS, 2013"

"The court can only determine if the substantial relationship test has been met 'when the moving party delineates with specificity the subject matters, issues, and causes of action presented in former representation.'"- in Cochran v. FIVE POINTS TEMPORARIES, LLC, 2012

Brown once enjoyed an attorney-client relationship with JSM and he is the opposing lawyer for MM; further, The Complainant has demonstrated the matters embraced within this current pending civil action are substantially related to the matters or cause of action wherein the attorney previously represented her.

Additionally, Brown contends that she has not consented to JSM's representation of MM and she will not consent to the representation. JSM and MM has violated Rules 1.7, 1.6, 1.5 and 1.8 of the Georgia State Bar Rules of Professional Conduct.

**WHEREFORE** For all of the reasons given above, The Complainant respectfully request that this Court **DISQUALIFY JOHN STEPHEN MIXON, ESQ. AS ATTORNEY OF RECORD FOR MM.** Furthermore, that This Court dismiss with prejudice any and all claims (Counter Claim and Cross Claim) against The Complainant, filed by **NON-PARTY MM** because **MM** lacks standing and its cross-claim is nothing more than frivolous litigation.

Brown prays that This Court will grant her requests otherwise, it would have an adverse effect on her case.

Respectfully submitted this 21 day of December, 2016.

Monica Brown, Pro se
Post Office Box 18785
Atlanta, Georgia 31126

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| MONICA BROWN | ) | |
| | ) | |
| COMPLAINANT, | ) | **JURY DEMAND** |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | 1:15-CV-04082-CAP |
| GLOBAL EMPLOYMENT SOLUTIONS, INC.) | | |
| LEXINGTON INSURANCE | ) | |
| AIG | ) | |
| DEFENDANTS. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2016, I personally filed the foregoing **MOTION TO DISQUALIFY JOHN STEPHEN MIXON, ESQ., AS ATTORNEY OF RECORD FOR NON-PARTY OF RECORD FOR MILLAR AND MIXON, LLC, AND MOTION TO DISMISS WITH PREDJUDICE MILLAR AND MIXON, LLC's CROSS-CLAIM** with The Clerk of US District Court sent a copy of same via email and or Pacer and US Mail:

*Attorney of Record*
*GES*
Eric Berezin, Esq.
Deepa N. Subramanian, Esq.
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
191 Peachtree Street, N.E., Suite 4800
Atlanta, Georgia 30303


AIG and Lexington Insurance Company
Glenn S. Bass, Esq.
Scrudder, Bass, Quillian, Horlock, Taylor & Lazarus, LLP
900 Circle 75 Parkway, S.E. Suite 850
Atlanta, Georgia 30339

Millar and Mixon, LLC
108 Williamson Mill Road
Jonesboro, Georgia 30236

By: _____

Monica Brown, Pro se
Post Office Box 18785
Atlanta, Georgia 31126

# EXHIBIT "A"

# STATE OF GEORGIA

**Secretary of State**
Corporations Division
313 West Tower
#2 Martin Luther King, Jr. Dr.
Atlanta, Georgia 30334-1530

# CERTIFICATE OF NAME CHANGE

I, **Brian P. Kemp,** The Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

MILLAR, MIXON AND HUNT, LLC

### Name Changed To

MILLAR AND MIXON, LLC

is hereby issued a CERTIFICATE OF NAME CHANGE under the laws of the State of Georgia on October 31, 2013 by the filing of all documents in the Office of the Secretary of State and by the paying of all fees as provided by Title 14 of the Official Code of Georgia Annotated.

**WITNESS** my hand and official seal in the City of Atlanta and the State of Georgia on December 23, 2013



*B: P. h*

Brian P. Kemp
Secretary of State



# GEORGIA
# CORPORATIONS DIVISION

## BUSINESS SEARCH

### BUSINESS INFORMATION

Business Name: **MILLAR AND MIXON, LLC**    Control Number: **0045380**

### NAME CHANGE HISTORY

| Filing Number | Old Name | New Name | Filing Date | Effective Date |
|---|---|---|---|---|
| 12009060 | MILLAR, MIXON AND HUNT, LLC | | 6/26/2015 4:54:55 AM | 01/01/0001 |

**Page 1 of 1, records 1 to 1 of 1**

Back



Office of the Georgia Secretary of State Attn: 2 MLK, Jr. Dr. Suite 313, Floyd West Tower Atlanta, GA 30334-1530,
Phone:(404) 656-2817 WEBSITE: http://www.sos.ga.gov/
© 2015 PCC Technology Group. All Rights Reserved. Version 2.1.2a    **Report a Problem?**

# Secretary of State

## Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

```
DOCKET NUMBER : 022270074
CONTROL NUMBER: 0045380
EFFECTIVE DATE: 08/09/2002
REFERENCE     : 0045
PRINT DATE    : 10/24/2002
FORM NUMBER   : 661
```

CHRISTI M. TATE
MILLAR, MIXON & HUNT, LLC
108 WILLIAMSON MILL ROAD
JONESBORO, GA 30236

### CERTIFICATE OF NAME CHANGE AMENDMENT

I, Cathy Cox, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that

### MILLAR AND MIXON, LLC
### A GEORGIA LIMITED LIABILITY COMPANY

has filed articles of amendment in the Office of the Secretary of State changing its name to

### MILLAR, MIXON AND HUNT, LLC

and has paid the required fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said articles of amendment.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on the date set forth above.



Cathy Cox
Secretary of State

# AMENDMENT TO THE ARTICLES OF ORGANIZATION

## OF

## MILLAR AND MIXON, LLC

1.

The current name of the Limited Liability Company is MILLAR AND MIXON, LLC (hereinafter the "Company").

2.

The Articles of Organization were filed on October 12, 2000.

3.

After a meeting of all of the current members and board of directors of the Company on August 1, 2002, the Company pursuant to the provisions of O.C.G.A. Section 14- 2-1006 and O.C.G.A. Section 14-2-1003 has elected to change it's name to Millar, Mixon, and Hunt, LLC.

4.

This amendment was adopted on August 1, 2002 and shall be effective immediately.

IN WITNESS WHEREOF, the undersigned has executed these Amendment to the

Articles of Organization on this _____ day of October, 2002

By: _____

J. Stephen Mixon, Esq.
Attorney for the Organizer

# AMENDMENT TO THE ARTICLES OF ORGANIZATION

## OF

## MILLAR AND MIXON, LLC

1.

The current name of the Limited Liability Company is MILLAR AND MIXON, LLC (hereinafter the "Company").

2.

The Articles of Organization were filed on October 12, 2000.

3.

After a meeting of all of the current members and board of directors of the Company on August 1, 2002, the Company pursuant to the provisions of O.C.G.A. Section 14-2-1006 and O.C.G.A. Section 14-2-1003 has elected to change it's name to Millar, Mixon, and Hunt, LLC.

4.

This amendment was adopted on August 1, 2002 and shall be effective immediately.


IN WITNESS WHEREOF, the undersigned has executed these Amendment to the

Articles of Organization on this _____ day of October, 2002


By: _____
   J. Stephen Mixon, Esq.
   Attorney for the Organizer

# Secretary of State
## Corporations Division
### 315 West Tower
### #2 Martin Luther King, Jr. Dr.
### Atlanta, Georgia 30334-1530

DOCKET NUMBER : 022270074
CONTROL NUMBER: 0045380
EFFECTIVE DATE: 08/09/2002
REFERENCE     : 0045
PRINT DATE    : 10/24/2002
FORM NUMBER   : 661

CHRISTI M. TATE
MILLAR, MIXON & HUNT, LLC
108 WILLIAMSON MILL ROAD
JONESBORO, GA 30236

## CERTIFICATE OF NAME CHANGE AMENDMENT

I, Cathy Cox, the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that

### MILLAR AND MIXON, LLC
### A GEORGIA LIMITED LIABILITY COMPANY

has filed articles of amendment in the Office of the Secretary of State changing its name to

### MILLAR, MIXON AND HUNT, LLC

and has paid the required fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said articles of amendment.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on the date set forth above.



Cathy Cox
Secretary of State

# AMENDMENT TO THE ARTICLES OF ORGANIZATION

## OF

## MILLAR AND MIXON, LLC

### 1.

The current name of the Limited Liability Company is MILLAR AND MIXON, LLC (hereinafter the "Company").

### 2.

The Articles of Organization were filed on October 12, 2000.

### 3.

After a meeting of all of the current members and board of directors of the Company on August 1, 2002, the Company pursuant to the provisions of O.C.G.A. Section 14-2-1006 and O.C.G.A. Section 14-2-1003 has elected to change it's name to Millar, Mixon, and Hunt, LLC.

### 4.

This amendment was adopted on August 1, 2002 and shall be effective immediately.


IN WITNESS WHEREOF, the undersigned has executed these Amendment to the

Articles of Organization on this ____ day of October, 2002


By: _____
J. Stephen Mixon, Esq.
Attorney for the Organizer



# GEORGIA SECRETARY OF STATE
### Corporations Division
237 Coliseum Drive
Macon, Georgia 31217
(404) 656-2817

**Brian P. Kemp**
**Secretary of State**

May 03, 2013

Bruce R. Millar, Esq.
108 Williamson Mill Road
Jonesboro, GA 30236

## Application for Reinstatement of a Georgia Limited Liability Company

Pursuant to the provisions of Title 14 of the Official Code of Georgia Annotated, the undersigned Georgia Limited Liability Company hereby applies to the Secretary of State for a certificate of reinstatement and for that purpose submits the following:

### MILLAR, MIXON AND HUNT, LLC

was administratively dissolved by the Office of Secretary of State on the 31st day of May, 2010 for failure to comply with the requirements of Title 14 of the Official Code of Georgia Annotated. Grounds for the dissolution either did not exist or have been eliminated. All taxes owed by the Limited Liability Company have been paid. The name, satisfying the Title 14 of the requirements of Official Code of Georgia Annotated, by which the Limited Liability Company will hereafter be known, is

### MILLAR, MIXON AND HUNT, LLC

This application must be accompanied by the **$250.00** "reinstatement fee". Please complete and return all copies of this form with a check made payable to the Secretary of State for the amount due below. This application must be signed by a member, manager or organizer.

| LLC NAME | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| MILLAR, MIXON AND HUNT, LLC | 108 WILLIAMSON MILL RD | JONESBORO | GA | 30236-3219 |
| | | | | |
| AGT: J. STEPHEN MIXON, P.C. | 108 WILLIAMSON MILL ROAD | JONESBORO | GA | 30236 |

**IF ABOVE INFORMATION HAS CHANGED, TYPE OR PRINT CORRECTIONS BELOW:**

| LLC ADDRESS: | | CITY | STATE | ZIP |
|---|---|---|---|---|
| AGENT: Bruce R. miller | 108 Williamson mill Rd | Jonesboro | Georgia | 30236 |

I CERTIFY THAT I AM AUTHORIZED TO SIGN THIS FORM AND THAT THE INFORMATION IS TRUE AND CORRECT
AUTHORIZED SIGNATURE: *[signature]* DATE: 5/6/13
TITLE: member/owner
Email: bmillar@millermixon.com

COUNTY OF
REGISTERED
OFFICE:

| CONTROL #: 0045380 | AMOUNT DUE: | **$250.00** |
|---|---|---|
| RR#: 201305030020866 | | |

**Please complete and return the entire form. DO NOT DETACH.**

**Return application with fees within 60 (sixty) days to avoid an increase in fees or rejection of current application.**



**GEORGIA SECRETARY OF STATE**
Corporations Division
237 Coliseum Drive
Macon, Georgia 31217
(404) 656-2817

**Brian P. Kemp**
**Secretary of State**

May 03, 2013

☐ Check here for **EXPEDITE PROCESSING**. There will be an **ADDITIONAL $100.00 FEE** assessed *along with the $250.00* reinstatement fee.

## Request for Reinstatement Application of An Administratively Dissolved Entity

1. Entity Control Number    0045380

2. Entity Name    MILLAR, MIXON AND HUNT, LLC

3. Date of Dissolution    05/31/2010

4. Name of Requestor    Bruce R. Millar, Esq.

5. Requestor's Address    108 Williamson Mill Road
   Jonesboro, GA 30236

6. Phone Number    770-477-6360 Ext.

7. Requestor's Affiliation    Member

8. _Bruce R Millar_    Member    _5/6/13_
   Signature (signer **MUST** indicate capacity in which signing)    Date

9. Email: **bmillar@millarmixon.com**

**Please note - failure to complete entire form may result in delayed processing of request. Please sign and mail both forms to the Georgia Secretary of State - Corporations Division, along with a check or money order made payable to the Secretary of State.**

2013 MAY 13 AM 9:59
RECEIVED
SOS/PN
ACCOUNTING

# RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE

Version: | Current            ▾|

Ethics & Discipline / Current Rules / Part IV (After January 1 / 2001) - Georgia

Rules of Professional Conduct (also includes Disciplinary Proceedings and

Advisory Opinion rules) / CHAPTER 1 GEORGIA RULES OF PROFESSIONAL

CONDUCT AND ENFORCEMENT THEREOF

a. A lawyer shall not represent or continue to represent a client if there is a

   significant risk that the lawyer's own interests or the lawyer's duties to

   another client, a former client, or a third person will materially and adversely

   affect the representation of the client, except as permitted in (b).

b. If client informed consent is permissible a lawyer may represent a client

   notwithstanding a significant risk of material and adverse effect if each

   affected client or former client gives informed consent, confirmed in writing,

   to the representation after:

   1. consultation with the lawyer, pursuant to Rule 1.0(c);

   2. having received in writing reasonable and adequate information about

      the material risks of and reasonable available alternatives to the

      representation, and

3. having been given the opportunity to consult with independent counsel.

c. Client informed consent is not permissible if the representation:

    1. is prohibited by law or these Rules;

    2. includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or

    3. involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.

d. Though otherwise subject to the provisions of this Rule, a part-time prosecutor who engages in the private practice of law may represent a private client adverse to the state or other political subdivision that the lawyer represents as a part-time prosecutor, except with regard to matters for which the part-time prosecutor had or has prosecutorial authority or responsibility.

The maximum penalty for a violation of this Rule is disbarment.

Comment

Loyalty to a Client

[1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. If an impermissible conflict of interest exists before representation is undertaken the representation should be declined. The lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the parties and issues involved and to determine whether there are actual or potential conflicts of interest.

[2] Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Paragraph (a) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to

whether the client wishes to accommodate the other interest involved.

[3] If an impermissible conflict arises after representation has been undertaken, the lawyer should withdraw from the representation. See Rule 1.16. Where more than one client is involved and the lawyer withdraws because a conflict arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9. As to whether a client-lawyer relationship exists or, having once been established, is continuing, see Comment 4 to Rule 1.3 and Scope.

[4] As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated. Paragraph (d) states an exception to that general rule. A part-time prosecutor does not automatically have a conflict of interest in representing a private client who is adverse to the state or other political subdivision (such as a city or county) that the lawyer represents as a part-time prosecutor, although it is possible that in a particular case, the part-time prosecutor could have a conflict of interest under paragraph (a).

Simultaneous representation in unrelated matters of clients whose interests are only

generally adverse, such as competing economic enterprises, does not require informed consent of the respective clients.

Consultation and Informed Consent

[5] A client may give informed consent to representation notwithstanding a conflict. However, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's informed consent. When more than one client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain informed consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to give informed consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to give informed consent. If informed consent is withdrawn, the lawyer should consult Rule 1.9 and Rule 1.16.

[5A] Paragraph (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing. Such a writing may consist of a document executed by the

client or one that the lawyer promptly records and transmits to the client following an oral consent. See Rule 1.0(b). See also Rule 1.0(s) (writing includes electronic transmission). If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. See Rule 1.0(b). The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

Lawyer's Interests

[6] The lawyer's personal or economic interests should not be permitted to have an adverse effect on representation of a client. See Rules 1.1 and 1.5. If the propriety of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client objective advice. A lawyer may not allow related business interests to affect representation, for example, by referring

clients to an enterprise in which the lawyer has an undisclosed interest.


Conflicts in Litigation


[7] Paragraph (c)(2) prohibits representation of opposing parties in the same or a similar proceeding including simultaneous representation of parties whose interests may conflict, such as co-plaintiffs or co-defendants. An impermissible conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant. On the other hand, common representation of persons having similar interests is proper if the risk of adverse effect is minimal, the requirements of paragraph (b) are met, and consent is not prohibited by paragraph (c).


[8] Ordinarily, a lawyer may not act as advocate against a client the lawyer represents in some other matter, even if the other matter is wholly unrelated. However, there are circumstances in which a lawyer may act as advocate against a

client. For example, a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients give informed consent as required by paragraph (b). By the same token, government lawyers in some circumstances may represent government employees in proceedings in which a government entity is the opposing party. The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation.

[9] A lawyer may represent parties having antagonistic positions on a legal question that has arisen in different cases, unless representation of either client would be adversely affected. Thus, it is ordinarily not improper to assert such positions in cases while they are pending in different trial courts, but it may be improper to do so should one or more of the cases reach the appellate court.

Interest of Person Paying for a Lawyer's Service

[10] A lawyer may be paid from a source other than the client, if the client is

informed of that fact and gives informed consent and the arrangement does not compromise the lawyer's duty of loyalty to the client. See Rule 1.8(f). For example, when an insurer and its insured have conflicting interests in a matter arising from a liability insurance agreement, and the insurer is required to provide special counsel for the insured, the arrangement should assure the special counsel's professional independence. So also, when a corporation and its directors or employees are involved in a controversy in which they have conflicting interests, the corporation may provide funds for separate legal representation of the directors or employees, if the clients give informed consent and the arrangement ensures the lawyer's professional independence.

Non-litigation Conflicts

[11] Conflicts of interest in contexts other than litigation sometimes may be difficult to assess. Relevant factors in determining whether there is potential for material and adverse effect include the duration and extent of the lawyer's relationship with the client or clients involved, the functions being performed by the lawyer, the likelihood that actual conflict will arise and the likely prejudice to the client from the conflict if it does arise.

[12] In a negotiation common representation is permissible where the clients are generally aligned in interest even though there is some difference of interest among them.

[13] Conflict questions may also arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may arise. In estate administration the identity of the client may be unclear under the law of a particular jurisdiction. Under one view, the client is the fiduciary; under another view the client is the estate or trust, including its beneficiaries. The lawyer should make clear the relationship to the parties involved.

[14] A lawyer for a corporation or other organization who is also a member of its board of directors should determine whether the responsibilities of the two roles may conflict. The lawyer may be called on to advise the corporation in matters involving actions of the directors. Consideration should be given to the frequency with which such situations may arise, the potential intensity of the conflict, the effect of the lawyer's resignation from the board and the possibility of the corporation's obtaining legal advice from another lawyer in such situations. If there is material risk that the dual role will compromise the lawyer's independence of

professional judgment, the lawyer should not serve as a director.

Conflict Charged by an Opposing Party

[15] Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such as clearly to call into question the fair or efficient administration of justice, opposing counsel may properly raise the question. Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment. See Scope.

[16] For the purposes of 1.7 (d), part-time prosecutors include but are not limited to part-time solicitors-general, part-time assistant solicitors-general, part-time probate court prosecutors, part-time magistrate court prosecutors, part-time municipal court prosecutors, special assistant attorneys general, part-time juvenile court prosecutors and prosecutors pro tem.

[17] Pragmatic considerations require that the rules treat a lawyer serving as a part-time prosecutor differently. See Thompson v. State, 254 Ga. 393, 396-397 (1985).

Special Considerations in Common Representation

[18] As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. See Rule 1.4. The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client will not adversely affect representation involving a joint venture between the clients and agree to keep that information confidential with the informed consent of both clients.

RULE 1.6 CONFIDENTIALITY OF INFORMATION

Version:

Ethics & Discipline / Current Rules / Part IV (After January 1 / 2001) - Georgia

Rules of Professional Conduct (also includes Disciplinary Proceedings and

Advisory Opinion rules) / CHAPTER 1 GEORGIA RULES OF PROFESSIONAL

CONDUCT AND ENFORCEMENT THEREOF

A lawyer shall maintain in confidence all information gained in the professional relationship with a client, including information which the client has requested to be held inviolate or the disclosure of which would be embarrassing or would likely be detrimental to the client, unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, or are required by these Rules or other law, or by order of the Court.

A lawyer may reveal information covered by paragraph (a) which the lawyer reasonably believes necessary:

to avoid or prevent harm or substantial financial loss to another as a result of client criminal conduct or third party criminal conduct clearly in violation of the law;

to prevent serious injury or death not otherwise covered by subparagraph (i) above;

to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client;

to secure legal advice about the lawyer's compliance with these Rules.

In a situation described in paragraph (b) (1), if the client has acted at the time the lawyer learns of the threat of harm or loss to a victim, use or disclosure is permissible only if the harm or loss has not yet occurred.

Before using or disclosing information pursuant to paragraph (b) (1) (i) or (ii), if feasible, the lawyer must make a good faith effort to persuade the client either not to act or, if the client has already acted, to warn the victim.

The lawyer may, where the law does not otherwise require, reveal information to which the duty of confidentiality does not apply under paragraph (b) without being subjected to disciplinary proceedings.

The lawyer shall reveal information under paragraph (b) as the applicable law requires.

The duty of confidentiality shall continue after the client-lawyer relationship has terminated.

The maximum penalty for a violation of this Rule is disbarment.

Comment

[1] The lawyer is part of a judicial system charged with upholding the law. One of the lawyer's functions is to advise clients so that they avoid any violation of the law in the proper exercise of their rights.

[2] The observance of the ethical obligation of a lawyer to hold inviolate confidential information of the client not only facilitates the full development of facts essential to proper representation of the client but also encourages people to seek early legal assistance.

[3] Almost without exception, clients come to lawyers in order to determine what their rights are and what is, in the maze of laws and regulations, deemed to be legal and correct. The common law recognizes that the client's confidences must be protected from disclosure. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is upheld.

[4] A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is thereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.

[4A] Information gained in the professional relationship includes information gained from a person (prospective client) who discusses the possibility of forming a client-lawyer relationship with respect to a matter. Even when no client-lawyer relationship ensues, the restrictions and exceptions of these Rules as to use or revelation of the information apply, e.g. Rules 1.9 and 1.10.

[5] The principle of confidentiality is given effect in two related bodies of law, the attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. Rule 1.6 applies not merely to matters communicated in confidence by the client but also to all information gained in the professional relationship, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law. See also Scope. The requirement of maintaining confidentiality of information gained in the

professional relationship applies to government lawyers who may disagree with the client's policy goals.

Authorized Disclosure

[6] A lawyer is impliedly authorized to make disclosures about a client when appropriate in carrying out the representation, except to the extent that the client's instructions or special circumstances limit that authority. In litigation, for example, a lawyer may disclose information by admitting a fact that cannot properly be disputed, or in negotiation by making a disclosure that facilitates a satisfactory conclusion.

[7] Lawyers in a firm may, in the course of the firm's practice, disclose to each other information relating to a client of the firm, unless the client has instructed that particular information be confined to specified lawyers.

[7A] A lawyer's confidentiality obligations do not preclude a lawyer from securing confidential legal advice about the lawyer's personal responsibility to comply with

these Rules. In most situations, disclosing information to secure such advice will be impliedly authorized for the lawyer to carry out the representation. Even when the disclosure is not impliedly authorized paragraph (b)(1)(iv) permits such disclosure because of the importance of a lawyer's compliance with the Rules of Professional Conduct.

Disclosure Adverse to Client

[8] The confidentiality rule is subject to limited exceptions. In becoming privy to information about a client, a lawyer may foresee that the client intends serious harm to another person. The public is better protected if full and open communication by the client is encouraged than if it is inhibited.

[9] Several situations must be distinguished. First, the lawyer may not knowingly assist a client in conduct that is criminal or fraudulent. See Rule 1.2(d). Similarly, a lawyer has a duty under Rule 3.3(a)(4) not to use false evidence.

[10] Second, the lawyer may have been innocently involved in past conduct by the client that was criminal or fraudulent. In such a situation the lawyer has not violated Rule 1.2(d), because to "knowingly assist" criminal or fraudulent conduct requires knowing that the conduct is of that character.

[11] Third, the lawyer may learn that a client intends prospective conduct that is criminal and likely to result in death or substantial bodily harm. As stated in paragraph (b)(1), the lawyer has professional discretion to reveal information in order to prevent such consequences. The lawyer may make a disclosure in order to prevent death or serious bodily injury which the lawyer reasonably believes will occur. It is very difficult for a lawyer to "know" when such a heinous purpose will actually be carried out, for the client may have a change of mind.

[12] The lawyer's exercise of discretion requires consideration of such factors as the nature of the lawyer's relationship with the client and with those who might be injured by the client, the lawyer's own involvement in the transaction and factors that may extenuate the conduct in question. Where practical, the lawyer should seek to persuade the client to take suitable action. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes

necessary to the purpose. A lawyer's decision not to take preventive action permitted by paragraph (b)(1) does not violate this Rule.

Withdrawal

[13] If the lawyer's services will be used by the client in materially furthering a course of criminal or fraudulent conduct, the lawyer must withdraw, as stated in Rule 1.16(a)(1).

[14] After withdrawal the lawyer is required to refrain from making disclosure of the client's confidences, except as otherwise provided in Rule 1.6. Neither this rule nor Rule 1.8(b) nor Rule 1.16(d) prevents the lawyer from giving notice of the fact of withdrawal, and the lawyer may also withdraw or disaffirm any opinion, document, affirmation, or the like.

[15] Where the client is an organization, the lawyer may be in doubt whether contemplated conduct will actually be carried out by the organization. Where

necessary to guide conduct in connection with this Rule, the lawyer may make inquiry within the organization as indicated in Rule 1.13(b).

Dispute Concerning a Lawyer's Conduct

[16] Where a legal claim or disciplinary charge alleges complicity of the lawyer in a client's conduct or other misconduct of the lawyer involving representation of the client, the lawyer may respond to the extent the lawyer reasonably believes necessary to establish a defense. The same is true with respect to a claim involving the conduct or representation of a former client. The lawyer's right to respond arises when an assertion of such complicity has been made. Paragraph (b)(1)(iii) does not require the lawyer to await the commencement of an action or proceeding that charges such complicity, so that the defense may be established by responding directly to a third party who has made such an assertion. The right to defend, of course, applies where a proceeding has been commenced. Where practicable and not prejudicial to the lawyer's ability to establish the defense, the lawyer should advise the client of the third party's assertion and request that the client respond appropriately. In any event, disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be

made in a manner which limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

[17] If the lawyer is charged with wrongdoing in which the client's conduct is implicated, the rule of confidentiality should not prevent the lawyer from defending against the charge. Such a charge can arise in a civil, criminal or professional disciplinary proceeding, and can be based on a wrong allegedly committed by the lawyer against the client, or on a wrong alleged by a third person; for example, a person claiming to have been defrauded by the lawyer and client acting together. A lawyer entitled to a fee is permitted by paragraph (b)(1)(iii) to prove the services rendered in an action to collect it. This aspect of the rule expresses the principle that the beneficiary of a fiduciary relationship may not exploit it to the detriment of the fiduciary. As stated above, the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure.

Disclosures Otherwise Required or Authorized

[18] The attorney-client privilege is differently defined in various jurisdictions. If a lawyer is called as a witness to give testimony concerning a client, absent waiver by the client, paragraph (a) requires the lawyer to invoke the privilege when it is applicable. The lawyer must comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client.

[19] The Rules of Professional Conduct in various circumstances permit or require a lawyer to disclose information relating to the representation. See Rules 2.2, 2.3, 3.3 and 4.1. In addition to these provisions, a lawyer may be obligated or permitted by other provisions of law to give information about a client. Whether another provision of law supersedes Rule 1.6 is a matter of interpretation beyond the scope of these Rules, but a presumption should exist against such a supersession.

**RULE 1.5 FEES**

Ethics & Discipline / Current Rules / Part IV (After January 1 / 2001) - Georgia
Rules of Professional Conduct (also includes Disciplinary Proceedings and
Advisory Opinion rules) / CHAPTER 1 GEORGIA RULES OF PROFESSIONAL
CONDUCT AND ENFORCEMENT THEREOF

a. A lawyer shall not make an agreement for, charge, or collect an
   unreasonable fee or an unreasonable amount for expenses. The factors to be
   considered in determining the reasonableness of a fee include the following:

   1. the time and labor required, the novelty and difficulty of the questions
      involved, and the skill requisite to perform the legal service properly;

   2. the likelihood that the acceptance of the particular employment will
      preclude other employment by the lawyer;

   3. the fee customarily charged in the locality for similar legal services;

4. the amount involved and the results obtained;

5. the time limitations imposed by the client or by the circumstances;

6. the nature and length of the professional relationship with the client;

7. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. whether the fee is fixed or contingent.

b. The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

c.

1. A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue

to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated.

2. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the following:

    i.   the outcome of the matter; and,

    ii.   if there is a recovery showing:

        A. the remittance to the client;

        B. the method of its determination;

        C. the amount of the attorney fee; and

        D. if the attorney's fee is divided with another lawyer who is not a partner in or an associate of the lawyer's firm or law office, the amount of fee received by each and the manner in which the division is determined.

d. A lawyer shall not enter into an arrangement for, charge, or collect:

1. any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or

2. a contingent fee for representing a defendant in a criminal case.

e. A division of a fee between lawyers who are not in the same firm may be made only if:

1. the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation;

2. the client is advised of the share that each lawyer is to receive and does not object to the participation of all the lawyers involved; and

3. the total fee is reasonable.

The maximum penalty for a violation of this Rule is a public reprimand.

Comment

Reasonableness of Fee and Expenses

[1] Paragraph (a) requires that lawyers charge fees that are reasonable under the circumstances. The factors specified in (1) through (8) are not exclusive. Nor will each factor be relevant in each instance. Paragraph (a) also requires that expenses for which the client will be charged must be reasonable. A lawyer may seek reimbursement for the cost of services performed in-house, such as copying, or for other expenses incurred in-house, such as telephone charges, either by charging a reasonable amount to which the client has agreed in advance or by charging an amount that reasonably reflects the cost incurred by the lawyer.

[1A] A fee can also be unreasonable if it is illegal. Examples of illegal fees are those taken without required court approval, those that exceed the amount allowed by court order or statute, or those where acceptance of the fee would be unlawful, e.g., accepting controlled substances or sexual favors as payment.

Basis or Rate of Fee

[2] When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly

established. It is not necessary to recite all the factors that underlie the basis of the fee, but only those that are directly involved in its computation. It is sufficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.

[3] Contingent fees, like any other fees, are subject to the reasonableness standard of paragraph (a) of this Rule. In determining whether a particular contingent fee is reasonable, or whether it is reasonable to charge any form of contingent fee, a lawyer must consider the factors that are relevant under the circumstances.

Terms of Payment

[4] A lawyer may require advance payment of a fee, but is obliged to return any unearned portion. See Rule 1.16(d). A lawyer may accept property in payment for

services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to Rule 1.8(j). However, a fee paid in property instead of money may be subject to the requirements of Rule 1.8(a) because such fees often have the essential qualities of a business transaction with the client.

[5] An agreement may not be made, the terms of which might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures.

Prohibited Contingent Fees

[6] Paragraph (d) prohibits a lawyer from charging a contingent fee in a domestic

relations matter when payment is contingent upon the securing of a divorce or upon the amount of alimony or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony or other financial orders because such contracts do not implicate the same policy concerns. See Formal Advisory Opinions 36 and 47.

Division of Fee

[7] A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well. Joint responsibility for the representation entails financial and ethical responsibility for the representation.

[8] Paragraph (e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm.

Disputes over Fees

[9] If a procedure has been established for resolution of fee disputes, such as an arbitration or mediation procedure established by the Bar, the lawyer should conscientiously consider submitting to it. Law may prescribe a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class or a person entitled to a reasonable fee as part of the measure of damages. The lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

**RULE 1.8 CONFLICT OF INTEREST: PROHIBITED TRANSACTIONS**

Ethics & Discipline / Current Rules / Part IV (After January 1 / 2001) - Georgia Rules of Professional Conduct (also includes Disciplinary Proceedings and Advisory Opinion rules) / CHAPTER 1 GEORGIA RULES OF PROFESSIONAL CONDUCT AND ENFORCEMENT THEREOF

a. A lawyer shall neither enter into a business transaction with a client if the client expects the lawyer to exercise the lawyer's professional judgment therein for the protection of the client, nor shall the lawyer knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

   1. the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and

transmitted in writing to the client in a manner which can be reasonably understood by the client;

2. the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

3. the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

b. A lawyer shall not use information gained in the professional relationship with a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.

c. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, grandparent, child, grandchild, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.

d. Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a

portrayal or account based in substantial part on information relating to the representation.

e.  A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:

1.  a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; or

2.  a lawyer representing a client unable to pay court costs and expenses of litigation may pay those costs and expenses on behalf of the client.

f.  A lawyer shall not accept compensation for representing a client from one other than the client unless:

1.  the client gives informed consent;

2.  there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and

3.  information relating to representation of a client is protected as required by Rule 1.6.

g.  A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims for or against the clients, nor in a

criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in a writing signed by the client. The lawyers disclosure shall include the existence and nature of all claims or pleas involved and of the participation of each person in the settlement.

h. A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

i. A lawyer related to another lawyer as parent, grandparent, child, grandchild, sibling or spouse shall not represent a client in a representation directly adverse to a person whom the lawyer has actual knowledge is represented by the other lawyer unless his or her client gives informed consent regarding the relationship. The disqualification stated in this paragraph is personal and is not imputed to members of firms with whom the lawyers are associated.

j. A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

1. acquire a lien granted by law to secure the lawyer's fees or expenses as long as the exercise of the lien is not prejudicial to the client with respect to the subject of the representation; and

2. contract with a client for a reasonable contingent fee in a civil case, except as prohibited by Rule 1.5.

The maximum penalty for a violation of Rule 1.8(b) is disbarment. The maximum penalty for a violation of Rule 1.8(a) and 1.8(c)-(j) is a public reprimand.

Comment

Transactions Between Client and Lawyer

[1A] As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. The client should be fully informed of the true nature of the lawyer's interest or lack of interest in all aspects of the transaction. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client's informed consent, seek to acquire nearby property where doing so would adversely

affect the client's plan for investment. Paragraph (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities' services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

Use of Information to the Disadvantage of the Client

[1B] It is a general rule that an attorney will not be permitted to make use of knowledge, or information, acquired by the attorney through the professional relationship with the client, or in the conduct of the client's business, to the disadvantage of the client. Paragraph (b) follows this general rule and provides that the client may waive this prohibition. However, if the waiver is conditional, the duty is on the attorney to comply with the condition.

Gifts from Clients

[2] A lawyer may accept a gift from a client, if the transaction meets general

standards of fairness. For example, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the objective advice that another lawyer can provide. Paragraph (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.

Literary Rights

[3] An agreement by which a lawyer acquires literary or media rights concerning the subject of the representation creates a conflict between the interest of the client and the personal interest of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Paragraph (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer's fee shall consist of a share in ownership in the property, if the arrangement conforms to Rule 1.5 and paragraph (j) of this Rule.

Financial Assistance to Clients

[4] Paragraph (e) eliminates the former requirement that the client remain ultimately liable for financial assistance provided by the lawyer. It further limits permitted assistance to court costs and expenses directly related to litigation. Accordingly, permitted expenses would include expenses of investigation, medical diagnostic work connected with the matter under litigation and treatment necessary for the diagnosis, and the costs of obtaining and presenting evidence. Permitted expenses would not include living expenses or medical expenses other than those listed above.

Payment for a Lawyer's Services from One Other Than The Client

[5] Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the lawyer, in whole or in part. The third person might be a relative or friend, an indemnitor (such as a liability insurance company) or a co-client (such as a corporation sued along with one or more of its employees). Because third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing, lawyers are prohibited from accepting or continuing such representations unless the lawyer determines that there will be no interference with the lawyer's independent

professional judgment and there is informed consent from the client. See also Rule 5.4(c) (prohibiting interference with a lawyer's professional judgment by one who recommends, employs or pays the lawyer to render legal services for another).

Settlement of Aggregated Claims

[6] Paragraph (g) requires informed consent. This requirement is not met by a blanket consent prior to settlement that the majority decision will rule.

Agreements to Limit Liability

[7] A lawyer may not condition an agreement to withdraw or the return of a client's documents on the client's release of claims. However, this paragraph is not intended to apply to customary qualifications and limitations in opinions and memoranda.

[8] A lawyer should not seek prospectively, by contract or other means, to limit the lawyer's individual liability to a client for the lawyer's malpractice. A lawyer who handles the affairs of a client properly has no need to attempt to limit liability for the lawyer's professional activities and one who does not handle the affairs of

clients properly should not be permitted to do so. A lawyer may, however, practice law as a partner, member, or shareholder of a limited liability partnership, professional association, limited liability company, or professional corporation.

Family Relationships Between Lawyers

[9] Paragraph (i) applies to related lawyers who are in different firms. Related lawyers in the same firm are governed by Rules 1.7, 1.9, and 1.10.

Acquisition of Interest in Litigation

[10] Paragraph (j) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in the common law prohibition of champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in these Rules, such as the exception for reasonable contingent fees set forth in Rule 1.5 and the exception for lawyer's fees and for certain advances of costs of litigation set forth in paragraph (e).