UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MONICA BROWN

             Plaintiff,

    v.

GLOBAL EMPLOYMENT
SOLUTIONS, INC., LEXINGTON
INSURANCE, AIG,
            Defendants,

    v.

MILLAR & MIXON, LLC,
   Counter-Defendant/ Cross-Plaintiff

CIVIL ACTION NO.

1:15-CV-4082-CAP

## O R D E R

This is an action to enforce an attorney's lien.  The court conducted a final evidentiary hearing on February 7, 2017.  Immediately prior to the hearing, Brown filed a motion to stay and a notice of appeal [Doc. Nos. 100, 101].  The court orally denied the motion to stay and proceeded with the hearing.[1]

---

[1] The court notes that the filing of an appeal from a nonappealable order does not deprive this court of jurisdiction.  *See United States v. Hitchmon*, 602 F.2d 689, 690 (5th Cir. 1979) (*en banc*) (rev'd on other grounds).

## I. Procedural Background

This case began as a breach of contract suit removed from state court to this court.  Global Employment Solutions, Inc. ("Global"), who was sued for breach of contract, filed a counterclaim for Rule 22 interpleader and sought to pay into the court's registry money it held to which both Brown and Millar & Mixon, LLC ("M&M") asserted claims.

Global is Brown's former employer.  In 2013, Brown sued Global for retaliation under Title VII of the Civil Rights Act of 1964.  *Brown v. Global Employment Solutions, Inc.*, Civil Action No. 1:13-CV-4229-CAP ("*Brown 2013*").[2]  At the time the case was filed, Brown was represented by Attorney Stephen Mixon, who is associated with M&M.  Near the end of discovery and immediately prior to a scheduled private mediation, Mixon moved to withdraw as counsel for Brown, citing irreconcilable differences[3] [*Brown*

---

[2] This court may take judicial notice of the contents of its own records in other cases, as well as records of an inferior court. *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

[3] During the February 7, 2017, evidentiary hearing, it became apparent that the differences between Brown and her counsel involved the identity of the private mediator.  According to Mixon's testimony, he had agreed with Global's counsel to utilize Attorney Michael Bowers as mediator, but Brown objected.  It is unsurprising that she objected since in 1997, then-Governor Zell Miller directed Bowers, who was Georgia's Attorney General at that time, to investigate possible misappropriation of grant funds received by Brown from the Governor's Discretionary Fund.  *See Brown v. State of Georgia*, Civil Action No. 106-CV-709-RWS at Doc. No. 1-12.

*2013*, Doc. No. 38]. Attached to the motion to withdraw was an email from Brown[4] to Mixon in which Brown expresses her agreement to Mixon's withdrawal [*Brown 2013* at Doc. No. at 38-2].[5] Accordingly, the court allowed Mixon to withdraw [*Brown 2013*, Doc. No. 39], and Brown continued with her case pro se.[6] Immediately upon the court's grant of his motion to withdraw, Mixon, on behalf of M&M, the law firm whom Brown engaged,[7] filed the

---

[4] The court notes that this document, filed on September 15, 2014, contains Brown's email address. At the hearing on February 7, 2017, Brown requested the court redact her email address from its order of February 6, 2017 [Doc. No. 99], because she did not want it to be part of the public domain. The court acquiesced to the request and did file a redacted order [Doc. No. 99-1]. However, Brown's email address has been in an open public record for more than two years; therefore, any other part of the record of the instant case that contains the email address will not be redacted or sealed.

[5] Brown conceded at this court's February 7, 2017, hearing that she did not file any objection to Mixon's withdrawal on the record.

[6] *Brown 2013* was settled after mediation; the Settlement Agreement and Release of Claims memorialized the settlement and was provided to the undersigned for *in camera* inspection by Global's counsel on November 24, 2015. The court, seeing no need to file the agreement, maintained it in chambers. Because it has become necessary for the court to evaluate the amount of the settlement, the court's copy of the agreement is attached to this order, but is maintained under seal. The handwritten underlining and other notations on page 1 of the attached copy were made by chambers staff while working on this case and are not a part of the original agreement.

[7] The court recognizes that Brown contends that she engaged the legal entity of J. Stephen Mixon, P.C. to represent her and not the legal entity of M&M. However, the engagement agreement, signed and initialed by Brown, which was introduced into evidence at the February 7, 2017, hearing [Defendant's Ex. 1], defines "Counsel" as M&M. Importantly, Brown agreed to pay "Counsel" fees and expenses in the event of termination or withdrawal [Defendant's Ex. 1 at 4] not J. Stephen Mixon, P.C. Additionally, in the

attorney's lien that is subject of the instant case pursuant to O.C.G.A. § 15-19-14.

Ultimately, Brown's contract claims[8] against Global in the instant case were dismissed [Doc. No. 20], and the court allowed Global to pay the disputed funds[9] into the registry and be discharged from this case [Doc. No. 44].  M&M filed its answer and counterclaim asserting its claim to the funds [Doc. No. 10].  Brown did not file an answer to the interpleader complaint or the cross-claim by M&M.[10]

Pursuant to Federal Rule 55(a), a clerk's entry of default regarding Brown was made on May 4, 2016.  Despite engaging in a vigorous motion practice, Brown has neither moved to set aside the entry of default nor

---

settlement agreement between Brown and Global, Brown acknowledges that her former counsel is M&M.  Settlement Agreement and General Release of Claims at 1 (attached under seal).  Therefore, the attorney's lien was properly filed in the name of M&M.

[8] The contract claims stemmed from the settlement agreement entered into between Brown and Global in *Brown 2013*.  A complete discussion of those claims is contained in this court's order of February 2, 2016 [Doc. No. 20].

[9] The disputed funds are in the amount of the attorney's lien filed by M&M and are a part of the settlement proceeds Global allocated to Brown's retaliation claim.  Because settlement funds were subject to the attorney's lien, Global maintained the funds awaiting a resolution between Brown and M&M.  That resolution never came.

[10] In deference to Brown's pro se status, the court alerted her to the obligation to file a responsive pleading pursuant to Federal Rule of Civil Procedure 12(a)(4)(A) and even set forth the timeline for doing so [Doc. No. 20 at 15].  Yet, she ignored this obligation.

offered any explanation for her failure to comply with the Federal Rules of Civil Procedure regarding responsive pleadings.[11]   In a similar vein, Brown did no discovery and failed to submit a proposed preliminary report and discovery plan after being ordered to do so by the court [Doc. No. 20 at 16]. However, she has vehemently challenged M&M's entitlement to the funds at issue.

In its motion for default judgment, M&M requested a hearing on damages [Doc. No. 34].  Because M&M's pleadings were insufficient to establish its claim to any sum certain, much less the entirety of the funds paid into the court's registry by the stakeholder, the court scheduled a damages hearing [Doc. No. 44].

Generally, a damages hearing in a case in which an opposing party is in default is held before the court without a jury.  This is so because a defaulting party is ordinarily not participating in the litigation and therefore has made no request for a jury trial.  Here, Brown participated in the litigation at all stages, but she did not respond to the counterclaim and cross-claims, leaving herself in default.  The practical result of this default is that Brown admitted

---

[11] At the February 7, 2017, hearing, Brown stated that she has one year to challenge the entry of default.  While this assertion is in direct contravention to years of legal precedent under Rule 55(c), the issue has never been raised by Brown through a properly filed motion and is not addressed here.

all factual allegations in M&M's cross-claim.[12]  But, she did not admit the

amount of money M&M is entitled to receive from the interpled funds, and

she has, on all filings with this court, asserted a jury demand.

M&M argued that Brown is not entitled to a jury trial, and for reasons

more in-depth than those asserted by M&M, the court determined there is no

right to a jury trial in a dispute about an attorney's lien.  The court's

comprehensive analysis of the jury trial issue is contained in its November 1,

2016, order [Doc. No. 88] and will not be repeated here.[13]

---

[12] Despite the default and accompanying admissions by Brown, the court, in deference to her pro se status, afforded her a great deal of leeway at the February 7, 2017, hearing.  To the extent that Brown articulated discernible arguments at the hearing, the court is addressing them herein where applicable.  For example, Brown argued that the attorney's lien should be dismissed because it was filed by the incorrect entity.  Brown waived her right to assert this argument through her default; nevertheless, as explained in Note 6 *infra*, there is no merit to this argument.  Accordingly, the motion to dismiss the lien is DENIED.

[13] Brown has continued to assert her right to a jury trial and seems to contend that the court denied her right to a jury trial with no legal citation or analysis explaining the ruling.  *See* Notice of Appeal at 3 [Doc. No. 101]. Brown expressed this same misapprehension at the pretrial conference on December 21, 2016, when she restated her demand for a jury trial as if she was unaware of the court's November 1, 2016, order containing the lengthy analysis as to why a jury trial is not allowed in an action to enforce an attorney's lien [Doc. No. 88].  After being informed by the court that a ruling on that issue had previously occurred, she responded, "I must have missed that."  The order was mailed to Brown via regular and certified mail.  As is her usual practice, Brown failed to claim the certified mail, and it was returned to the court as undeliverable [Doc. No. 91].  The court has taken extraordinary, not to mention costly, steps to ensure Brown receives all court

While it is not the court's usual practice to conduct a pretrial conference prior to a bench trial or evidentiary hearing for the purposes of ascertaining a damages amount, Brown noted a request for a pretrial conference within the caption of her proposed pretrial order [Doc. No. 74]. Accordingly, the court scheduled the pretrial conference for December 21, 2016. Despite the court's grant of the request for a conference, on the morning of December 21, 2016, Brown sought a continuance of the pretrial conference arguing that counsel for M&M refused to meet and confer with her in accordance with the court's local rules [Doc. No. 92]. The rules cited by Brown were inapplicable, and the motion to continue was denied [Doc. No. 96]. As such, the pretrial conference proceeded as scheduled.

At the conclusion of the pretrial conference, the court issued an order setting a date of February 7, 2017, for the evidentiary hearing as to the amount of money M&M will be entitled to receive under its attorney's lien [Doc. No. 96]. Based on the representations of Brown at the conference, the

---

filings: all orders are sent to her certified mail. However, the orders are consistently returned to the court as unclaimed. In response to a show cause order regarding her failure to claim the certified mail sent to her by the court [Doc. No. 75], Brown stated that she is unable to obtain the mailings because of her work schedule. Therefore, the court has, in addition to the certified mailings, sent her court documents via regular mail. The court believes that Brown's claim of not being aware of court rulings that are, in her view, unfavorable represents nothing more than feigned ignorance in order to continue to stall the litigation process.

court approved the issuance of subpoenas for two witnesses, Bruce Millar and Sydney Hu [Doc. No. 95].[14]  It further required Brown, no later than January 3, 2017, to submit supplemental information to the court as to document subpoenas she sought—an opportunity Brown requested at the pretrial conference [Doc. No. 95].

Despite the clear instructions in the court's December 21, 2016, order [Doc. No. 95] as to subpoenas, Brown failed to comply.  First, she filed no supplementation as to the document subpoenas.  Second, she did not obtain the subpoenas for Hu and Millar from the intake desk of the clerk's office.  During the February 7, 2017, hearing, Brown stated that she telephoned the intake desk on Friday, February 3, 2017, but that she did not appear in person as the court instructed.

On February 3, 2017, Brown moved for a continuance based upon the unavailability of one of her voluntary witnesses, Barbara Woodward-Smith,

---

[14] The court denied permission for Brown to subpoena a number of witnesses she wished to call.  For example, Brown wished to subpoena Georgia's Secretary of State in order to prove the legal makeup of various entities such as M&M and Mixon's own professional corporation.  Because there are public records available from the Secretary of State to establish the legal structure of the entities, the court found no reason for subpoenaing the Secretary of State and did not grant permission for Brown to obtain such subpoena.  Moreover, Brown tendered two such documents [Plaintiff's Ex. 1 and 2] at the evidentiary hearing, and the documents were admitted by the court.

her own inability to obtain subpoenas, and the denial of her right to a jury trial [Doc. No. 98]. The court denied the motion to continue [Doc. No. 99].

The hearing began on February 7, 2017, at 10:30 AM. Brown appeared and stated she was not ready to proceed; Mixon appeared on behalf of M&M and announced ready to proceed.

## II. Motion to Stay and Notice of Appeal [Doc. Nos. 100 and 101]

Immediately prior to the hearing Brown filed a four-page document entitled motion to stay. Because the contents of the document indicated an intent to appeal and set forth enumerated issues Brown sought to raise before the Court of Appeals, the clerk properly docketed the document as two separate entries: a motion to stay and a notice of appeal.

This is Brown's fifth notice of appeal in this case. However, as with her prior four attempts, it is premature. There has been no final order in this action; therefore, the Court of Appeals does yet not have jurisdiction to consider the issues raised by Brown.

As to the motion to stay, the grounds asserted by Brown all relate to her intention to seek a ruling from the Court of Appeals. Because those issues cannot be raised prior to a final judgment in this action, the court denied the motion to stay.

## III.  Evidentiary Hearing

### A. Brown's Objections

The court conducted the evidentiary hearing over Brown's objections. She voiced a number of complaints as to her readiness to proceed with the February 7, 2017, hearing.  As explained below none of her complaints merited a stay or continuance.

First, Brown complained that her witnesses were not present.  In her portion of the pretrial order,[15] Brown listed the following witnesses:

> John Stephen Mixon, Esq.
> Bruce Millar, Esq.
> Sydney Hu, Esq.
> Alex Roberson, Esq.
> Barbara Woodward-Smith, Retired Lt. Fulton County Sheriff
> Aretha Ewell

[Doc. No. 86 at 1].  Brown noted that Woodward-Smith and Ewell would voluntarily testify.  Additionally, M&M's portion of the proposed pretrial order provided that Mixon would be present to testify [Doc. No. 73, Att. F-2]; and he was present to testify and Brown had the opportunity to cross-examine him.  After hearing from Brown at the December 21, 2016, pretrial conference as to the expected subject-matter of the testimony of Millar, Hu,

---

[15] In her original proposed pretrial order [Doc. No. 74], Brown failed to list a single witness.  After ordered to do so by the court [Doc. No. 82], Brown provided the list of names set forth herein.

and Roberson, the court approved the issuance of subpoenas as to Millar and Hu [Doc. No. 95].[16]  Despite clear direction from the court on how to obtain the subpoenas for Hu and Millar in the December 21, 2016, order [Doc. No. 95], Brown waited, by her own admission, until February 3, 2017—44 days after the order was issued and 4 days prior to the hearing, to attempt to procure the two approved subpoenas.  According to Brown, she telephoned the clerk's intake desk on February 3, 2017, and asked for the subpoenas—in clear contravention of the court's instructions to present the order to the intake staff.  Notably, Brown made a filing with the court on February 3, 2017 [Doc. No. 98], which indicates that she was present in the courthouse on that day.  When the court inquired of the clerk's office employees about Brown's attempts to get the two approved subpoenas, the court learned no request for subpoenas was logged by intake staff during the business hours of February 3, 2017.[17]  As to the two witnesses that Brown informed the court would voluntarily testify, she offered no explanation as to why Ewell was not

---

[16] The court found that Roberson had no connection with Brown or the work done in *Brown 2013*; therefore, the court denied approval as to a subpoena for Roberson.

[17] The court did learn that on Friday, February 3, 2017, Brown approached a departing clerk's office employee outside the intake desk after the office had closed to the public; Brown showed the employee the December 21, 2016, order and asked that the subpoenas for Millar and Hu be issued.  Because the clerk's office was closed, Brown was instructed to return during business hours to obtain her subpoenas.  Apparently, she did not do so.

present on February 7, 2017, and she claimed that Woodward-Smith had recently had surgery and could not attend.[18]  In deference to Brown's pro se status, the court allowed her to make a proffer as to Woodward-Smith's expected testimony.[19]

Second, Brown complained that she was unable to bring her computer and cellular telephone beyond the security checkpoint in the Richard B. Russell Building.  She claimed that her computer would give her the ability to do legal research.  However, the hearing regarded nothing more than the amount of money due to M&M under its attorney's lien; the court heard no legal argument from either party.  Brown further asserted that the exhibits she intended to tender during the evidentiary hearing were on her computer. The court's rules regarding computers and cellular telephones are posted on its website at www.gand.uscourts.gov.  Moreover, Brown learned of this rule herself when she attended the pretrial conference on December 21, 2016.

---

[18] Brown offered no supporting documentation regarding Woodward-Smith's health condition or when she would be available to testify.

[19] In her proffer, Brown stated that Woodward-Smith would testify to telephone conversations she listened to Brown have with Mixon or other M&M employees.  Brown asserted that, based on these telephone conversations, Woodward-Smith could testify about how much time Mixon spent working on the case.  Because Brown herself was a party to all the telephone conversations at issue, she was capable of testifying about what was said.  Therefore, the absence of Woodward-Smith did not merit a stay or continuance.

Nevertheless, she did not file a motion seeking permission to bring these items into the courtroom, as she is required to do by this court's local rules. Furthermore, that Brown maintained her exhibits in electronic format only is nonsensical because absent tendering the computer itself to the court, there would be no method for admitting the exhibits into evidence.[20]  As Brown set forth in her portion of the proposed pretrial order [Doc. No. 74 at 10], she was required to affix exhibit stickers to her exhibits prior to the beginning of the hearing.  Thus, it appears she was aware that she was required to bring physical copies of her exhibits to court on February 7, 2017, yet did not do so. In any event, at Brown's request, the court provided her with a copy of documents that she had previously emailed directly to chambers staff in August 2016.[21] Brown tendered six of those documents at the hearing, and they were admitted by the court [Plaintiff's Exs. 1-6].

---

[20] The court notes that Brown failed to list any exhibits in her portion of the proposed pretrial order [Doc. No. 74], and after being ordered to provide the list, she included no exhibits in her supplemental pretrial order filing [Doc. No. 86].

[21] The letter and attached documents Brown emailed directly to chambers staff requested that the court review the documents and place them under seal.  Brown never filed a motion to seal on the docket and there was no explanation as to what capacity Brown intended the documents to be placed on the docket.  In the letter accompanying the documents at issue, Brown claimed that they were subject to attorney-client privilege.  However, by challenging the work performed for her by M&M, Brown has waived her attorney-client privilege with respect to communications with Mixon and

Third, Brown complained that she had not had adequate time to prepare for the hearing.  At the pretrial conference, Brown requested two months to prepare for the hearing.  By contrast, M&M—the party with the burden of proof—announced that it needed no additional time to prepare and could proceed immediately after the pretrial conference concluded.  In an attempt to accommodate Brown, the court put the hearing off for nearly seven weeks and provided Brown with immediate notice of the hearing date.  Because the hearing concerned nothing more than the amount of money M&M would recover under its attorney's lien, the time afforded Brown was more than ample.

Finally, Brown argued that she was at a disadvantage because she is a pro se litigant opposing a seasoned attorney.  The court notes, however, neither this action nor *Brown 2013* are the only cases in which Brown has litigated on her own behalf in this court.   In a case strikingly similar to *Brown 2013*, Brown filed a Title VII action against yet another employer. *Brown v. R.A. Clark Consulting, Ltd.*, Civil Action No. 1:08-CV-3000-RLV ("*Brown 2008*").  As with *Brown 2013*, the 2008 case began with counsel representing Brown; after a disagreement on how to proceed in light a

---

other M&M employees. *See Christenbury v. Locke Lord Bissell & Liddell, LLP*, 285 F.R.D. 675, 682 (N.D. Ga. 2012) (a client waives privilege when he places the subject matter of the lawyer's representation at issue).

defendant's suggestion of bankruptcy, counsel withdrew, and Brown continued the litigation pro se.  Ultimately, the court found Brown's "complete disregard for this Court's clear instructions . . ." and her refusal to meet her discovery obligations established a pattern of willful conduct [*Brown 2008*, Doc. No. 95 at 14] such that the case was dismissed with prejudice as a sanction against Brown [*Brown 2008*, Doc. Nos. 95 and 96]. Again in 2010, Brown represented herself in an action before this court. *Brown v. Public Storage, Inc.*, 1:10-CV-3292-RLV ("*Brown 2010*").  Brown's claims were dismissed because she failed to comply with the Federal Rules of Civil Procedure and orders of the court [*Brown 2010*, Doc. Nos. 23 and 27]. Brown's earliest pro se appearance before this court came in 2006 when she filed a petition for habeas corpus to challenge her 2001 felony convictions for four counts of criminal attempt to commit theft by taking in Gwinnett County Superior Court.  *Brown v. State of Georgia*, Civil Action No. 1:06-CV-709-RWS ("*Brown 2006*").  The petition was dismissed by this court prior to service on the State of Georgia pursuant to Rule 4 of the Rules Governing Habeas Corpus Cases Under Section 2254 [*Brown 2006*, Doc. No. 2].  Again in 2010, Brown, representing herself in this court, filed a petition for habeas corpus to challenge the revocation of her probation.  *Brown v. State of Georgia DOC*, Civil Action No. 1:10-CV-3207-RWS ("*Brown Habeas 2010*").

This petition was also dismissed, this time, because Brown was no longer in custody [*Brown Habeas 2010*, Doc. Nos. 7, 9]. As these cases demonstrate, Brown has vast experience litigating in this court.[22] Her deficiencies appear to this court to be for purposes of delay and harassment rather than caused by her lack of training and education.

In sum, Brown's objections to the February 7, 2017, evidentiary hearing had no merit. Brown was given reasonable notice of the hearing along with specific instructions on how to prepare and proceed, but she failed to act with reasonable diligence and in compliance with court orders and rules.

---

[22] Brown is a frequent filer in the Eleventh Circuit Court of Appeals as well. In addition to the notice of appeal filed on the morning of the February 7, 2017, hearing, Brown has filed four notices of appeal in this case. (Court of Appeals Case Numbers: 16-10731, 16-13399, 16-15332, and 16-16183). Two of these were dismissed because Brown failed to pay the filing fee [Doc. Nos. 45 and 90], another appeal was dismissed because Brown failed to file her brief and appendix with the Court of Appeals [Doc. No. 89], and the fourth case was dismissed for lack of jurisdiction [Doc. No. 30]. The fifth notice of appeal in this case remains pending; Brown has not paid the filing fee. In the earliest Title VII case before this court, Brown filed two notices of appeal (Court of Appeals Case Numbers: 09-13028 and 11-10885). As is her habit, Brown failed to pay the filing fee for these appeals as well; both were dismissed by the Court of Appeals *sua sponte* for lack of jurisdiction [*Brown 2008*, Doc. Nos. 57, 105]. Brown's repeated filings of notices of appeal without accompanying payment of filing fees or required briefs demonstrates that she is not actually seeking judicial review of rulings by the district court. Rather, the actions appear to be tactics designed to harass the opposing party and obstruct completion of matters pending in the district court. Regardless of motive, Brown's tactics are an abuse of judicial process.

**B. Standard**

As set forth in the court's order of November 1, 2016 [Doc. No. 88], the sole issue for resolution at the evidentiary hearing was the amount of attorney's fees and expenses M&M is entitled to receive in relation to the representation of Brown in *Brown 2013*. For purpose of an attorney's lien filed under Georgia law, the measure of damages is quantum meruit. *Ellerin & Assocs. v. Brawley*, 589 S.E.2d 626, 629 (Ga. Ct. App. 2003). While Brown has stated that she intends to pursue a malpractice claim against Mixon at some point in the future, the instant suit does not involve claims of malpractice. But, because the legal doctrine of quantum meruit requires that M&M be paid for the value of the services rendered in *Brown 2013*, the court allowed Brown to raise questions to Mixon and make argument to the court about the work he did in *Brown 2013*.

> Quantum meruit literally means 'as much as he deserves.' It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient.

*Nelson & Hill, P.A. v. Wood*, 537 S.E.2d 670, 674 (Ga. Ct. App. 2000) (citations omitted). It is Brown's position that the value of M&M's services to her was zero. The heart of her argument at the February 7, 2017, hearing

17

was that Mixon did not evaluate the monetary worth of her Title VII claim
accurately and encouraged her to settle for less than she ultimately received
in the settlement.[23]  She offered no criticism of the pleadings drafted and filed
by M&M in *Brown 2013*; she did not challenge the discovery propounded by
and responded to by M&M.   At no point did Brown contest the hourly fee[24] of
Mixon; neither did she question the actual time spent that is set forth in
M&M's detailed time records [Defendant's Ex. 4].  Instead, she made
generalized statements that Mixon "did not work on my case."

   At the February 7, 2017, hearing, M&M introduced evidence of
expenses advanced on Brown's behalf and of work done by two individuals.
As to expenses, M&M seeks to recover $400 as the filing fee it paid in *Brown
2013* and $84.00 paid to the process server who served Global with the
complaint in *Brown 2013* [Defendant's Ex. 4 at 2].

   When she engaged M&M, Brown agreed to reimburse the law firm for
expenses [Defendant's Ex. 1 at 4].  More importantly, though, at the hearing
on February 7, 2017, Brown conceded that M&M is entitled to be reimbursed

---

[23] Brown even proposed that Mixon forego all fees and expenses if she could
show him that she received more in settlement than he predicted when he
represented her.

[24] Significantly, Brown agreed that if the attorney-client relationship was
terminated prior to conclusion of the case, she would pay M&M an hourly fee
for services rendered in the amount of "his regularly hourly rate of Three
Hundred Fifty Dollars ($350.00) per hour." [Defendant's Ex. 1 at 4].

for the filing fee paid.  Furthermore, the docket reflects that the filing fee of
$400 was submitted along with the complaint in *Brown 2013*.  Also, M&M's
expense record demonstrates that $84.00 was paid to RGP Attorney Services,
LLC to serve Global and provide an affidavit of service to M&M.  That
affidavit of service was filed by M&M [*Brown 2013*, Doc. No. 4] and reflects
that Kevin J. Flatow of RGP Attorney Services, LLC did in fact serve Global.

Brown received the value of the expenses advanced by M&M when she
received the proceeds of the settlement.  Therefore, as a component of the
attorney's lien, M&M is entitled to recover the expenses it advanced on behalf
of Brown in the total amount of $484.00.

In addition to the expenses discussed above, M&M seeks to recover the
reasonable value of the firm's services to Brown.  According the time records
maintained by M&M, Mixon spent a total of 39.4 hours working on *Brown
2013* over the course of approximately five months.  The activities comprising
the 39.4 hours included: meeting with Brown, drafting and filing the
complaint, conferring with defense counsel, preparing and conducting the
Rule 26(f) conference, review of the joint preliminary report and discovery
plan, review of responses to individual disclosures and certificate of
interested persons, review of the defendant's discovery responses, review and
editing of Brown's discovery responses, review of a protective order, and

deposition preparation with Brown.  Even a cursory reading of the docket in *Brown* 2013 demonstrates that the activities described above actually took place.  There has been no assertion by Brown that Mixon did not conduct the activities described, and there has been no challenge by Brown as to the specific time spent at each task.

In addition to his own time, Mixon testified that Sydney Hu, another individual employed by M&M, expended 34.3 hours working on *Brown 2013*.  Brown made no contention that Hu did not actually put in those hours and perform the tasks listed in M&M's time records.  Rather, Brown asserts that she did not agree to have Hu perform work on her case.  This assertion is belied by the language of the Engagement Agreement [Defendant's Ex. 1 at 1] in which Brown acknowledged that M&M may assign any attorney associated with its office to represent Brown's interests in this case or hire experts, consultants, and investigators to help with her case.   Brown's complaint regarding Hu appears to be that Hu was not a licensed attorney at the time she worked on Brown's case.  According to M&M's time records [Defendant's Ex. 4], the work performed by Hu occurred between the dates of April 23, 2014 and June 16, 2014.  While Mixon testified that he believed that, during the time Hu was working on *Brown 2013*, she was licensed to practice law in the State of Massachusetts, records from the Massachusetts Board of Bar

Overseers establishes that she was not admitted to the Massachusetts Bar until October 2014, the same month she was admitted to the Georgia Bar and after the work she performed on *Brown 2013* was completed.  Thus, Brown is correct in her claim that Hu was not licensed while working on her case. However, a review of the time records [Defendant's Ex. 4] and the pleadings in *Brown 2013* demonstrate that Hu did not perform any activity that requires a law license.  Rather, Hu performed functions commonly associated with paralegals or law student interns.[25]  Brown contends that Mixon misrepresented Hu's status to her as a licensed attorney, and given Mixon's testimony that he was told by Hu that she was licensed in Massachusetts at the time in question, it is more likely than not that Mixon did tell Brown that Hu was a licensed attorney.  However, whether Brown agreed to have another M&M employee work on her case and whether she was inaccurately told that Hu was a licensed attorney are completely irrelevant to the issue before the court.  This is so because this is not a contract action; it is a recovery under a theory of quantum meruit.  Therefore, the court must consider the reasonable value of the M&M's services to Brown in light of the

---

[25] Hu received her Juris Doctor from Boston University School of Law on May 19, 2013.

size of Brown's ultimate recovery.  In other words, the higher the recovery, the higher the value of the services.

The court recognizes that Brown claims absolute credit for the successful resolution of her case.  However, a review of the case filings after M&M's withdrawal demonstrates otherwise.  After M&M's withdrawal, Brown filed a motion to stay discovery and appoint a magistrate judge for mediation [*Brown 2013*, Doc. No. 47], she participated in an in-person mediation before Magistrate Judge Anand on December 18, 2014, which lasted 7 hours [*Brown 2013*, Doc. No. 52], and she participated in a telephone conference on December 22, 2014, which lasted 9 minutes [*Brown 2013*, Doc. No. 53].  Notably, Global had agreed to participate in mediation prior to M&M's withdrawal from the case.  Therefore, Brown's efforts merely changed the venue of mediation, which did reduce the costs of the mediator from $3,000 to zero.  Accordingly, the court estimates that Brown spent approximately eleven hours[26] on this matter after M&M withdrew.  This amount is dwarfed by the more than 70 combined hours spent by Mixon and Hu.

---

[26] In deference to Brown's pro se status, the court is allowing nearly four hours for the preparation and filing of the motion to stay and assign a magistrate judge for mediation [Brown 2013, Doc. No. 47], a six-page document that cites not a single legal authority.  The allocation of three hours and 51 minutes for this document is more than generous.

Ultimately, Global agreed to pay a gross amount of $99,500[27] in order

settle Brown's claim.  Settlement Agreement and General Release of Claims

at 1 (attached under seal).  This amount included the $21,991.60 claimed by

M&M in its attorney's lien [Brown 2013, Doc. No. 40].  Brown agreed for

Global to retain the amount of $21,991.60 until there was a resolution of the

amount owed to M&M.

At the hearing on February 7, 2017, Brown repeatedly pointed out that

Mixon urged her to settle for $50,000 or even less.  She contends that his

inability to predict the ultimate amount Global would be willing to pay to

resolve her claim should somehow negate M&M's right to be paid for services

rendered.  There is no authority for this position.

The evidence before the court establishes that M&M, through the

activities of Mixon and Hu, litigated Brown's case through the lawsuit

---

[27] The court is aware that paragraph 7 of the Settlement Agreement and
General Release of Claims (attached under seal) required that Brown
maintain the terms of the agreement in confidence.  That confidentiality
clause is not directed at Global (who provided the agreement to the court for
*in camera* review) or any other person or entity.  Because of the nature of the
claim at issue here, the court is compelled to include the final settlement
amount in this order and finds no basis to redact the amount from the public
filing of the order.  As set forth above, however, the agreement as a whole will
be maintained under seal as an attachment to this order.  While Brown
offered to reveal the amount of her settlement to Mixon during the February
7, 2017, hearing, a clear violation of the confidentiality clause, Mixon did not
accept her offer, and the amount of the settlement was not revealed by
Brown.

process for over nine months, and a significant settlement was recovered. Brown's eleventh hour participation in the day-long mediation process, which occurred after the initial pleadings were filed and nearly all discovery completed, does not undercut the services rendered by M&M.  In fact, the court finds that the settlement could not have been reached without the work of M&M.  Brown concedes that the initial offer of $82,500, which Global made prior to suit being filed had been taken off the table [*Brown 2013*, Doc. No. 47 at 3] and that counsel for Global refused to renew the offer.  Therefore, in order to achieve the ultimate settlement that was reached, Brown was required to file suit.  Had she attempted to do so without assistance of counsel, the court finds that the likely result would have been zero recovery. This finding is based on the demonstrated inability of Brown to comply with the Federal Rules of Civil Procedure, court rules, and instructions from the court throughout this and other cases discussed herein.

The total sought by M&M is 22.1% of the total settlement Brown recovered.  In the engagement agreement, Brown agreed to pay 40% of any amount recovered [Defendant's Ex. 1 at 2].[28]  In light of the evidence of time spent by Mixon and Hu in conjunction with a review of the filings made in

---

[28] While the engagement agreement is not being enforced, what Brown agreed to at the outset of her relationship with M&M is relevant here.

*Brown 2013*, the court finds that the value of the services rendered is in excess of $21,506.60. However, M&M has limited its claim to the money that is currently in the court's registry [Doc. No. 49 at 4]. As such, the court will award M&M the full amount sought here.

## IV. Conclusion

Relying upon the record in this case, evidence introduced at the February 7, 2017, hearing, and records judicially noticed from other cases, the court finds that M&M is entitled to recover $21,991.60 pursuant to its attorney's lien.

Accordingly, Brown's oral motion to dismiss the attorney's lien is DENIED, and the clerk is DIRECTED to terminate this civil action.

The clerk is further DIRECTED to pay $21,991.60 to M&M at the conclusion of any appeal or upon the expiration of the time for filing an appeal, whichever comes first.

As described in pages 13-15 and Note 13 above, Brown has repeatedly flouted the rules and instructions of this court. Therefore, the court finds that it would be beneficial to disseminate this order detailing her consistent abuse of judicial process by distributing a copy of this order to all judges of this court and recommending publication of this order to online legal research entities.

The clerk is DIRECTED to send a copy of this order to Brown via regular United States Mail and return receipt requested at P.O. Box 18785, Atlanta, Georgia 31126.

SO ORDERED, this 17th day of February, 2017.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge